Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Sanjay Taylor presiding, case number 23-0571, People v. Javaris McKnight. Good afternoon. My name is Sanjay Taylor. I'm a presiding judge of the Sixth Division of the First District Appellate Court. I'm joined this afternoon on the panel by Justice Michael Hyman and Justice Celia Gamrath. If I can ask the counsel to introduce themselves and we'll start with the defendant's counsel. Good afternoon. My name is Talon Nuri with the Office of the State Appellate Defender representing Mr. Javaris McKnight. Okay, good afternoon, Mr. Nuri. I'm Assistant State's Attorney Erin Slattery on behalf of the people. Good afternoon, Ms. Slattery. Mr. Nuri, you have 20 minutes to present your argument. How much of that 20 minutes would you like to reserve for rebuttal? Five minutes, please. Okay. And Ms. Slattery will have 20 minutes as well. With that, Mr. Nuri. Good afternoon. As I said, my name is Talon Nuri on behalf of the State Appellate Defender representing Mr. Javaris McKnight. May it please the court. Constructive possession cases by definition rely on circumstantial evidence. However, they do require actual evidence. They're not strict liability cases. And a driver of a vehicle is not strictly liable for being in possession of anything found inside a vehicle they just happen to be driving. Just as being a guest in a house does not create liability for anything subsequently found inside that house. Likewise, being a driver of a vehicle does not create criminal liability without further proof that the driver knew of the vehicle's contents. The facts of this case are as follows. Police officers... We know the facts. We've read the briefs and the record. One question I have is there was a stipulation with regard that McKnight is a felon. What's the nature of that charge? I think he served 10 year prison sentence. The underlying offense, I believe, was aggravated battery. And anything else? Aggravated battery. Discharge of a firearm. Yes. Yes. Okay. And he received a sentence of 10 years. Am I understanding? Yes. Okay. So he... That's a very serious charge. And it's a charge involving a firearm. And in your introduction, one thing you did not mention with regard to circumstantial evidence is that he was stopped by police. And then he fled in his car. That can be taken account, can't it? Yes. Well, it definitely can be taken into account that he fled from the stop. As I was saying, though, knowledge is an element of the offense of constructive possession. And while fleeing alone might be evidence of consciousness of guilt in some way, without some corroborative proof of knowledge, the probative value of fleeing alone is insufficient to establish knowledge for purposes of constructive possession. Your argument really is that it's not a reasonable inference that he knew of the presence of the gun. Yes, that's correct, Your Honor. It's not a reasonable... Why is it? I mean, he's a felon, a gun crime. He took off. Why is that not a reasonable inference? Because in constructive possession cases, as I said, they're not strict liability. There has to be some corroborative proof of knowledge. Otherwise, essentially, the state would be asking this court to expand constructive possession jurisprudence to basically create a holding that fleeing alone would be sufficient to convict someone for possessing anything found in a vehicle that they did not own. Or in the residential realm, somebody fleeing a residence that was not theirs, being held criminally liable for anything that was subsequently found in that residence. Fleeing from the police on a stop is a very serious situation because, as in this case, there was an accident just a few minutes later that he caused. He came to a stop because of an accident. And when police stop people, most people obey. And if they flee, as Justice Taylor inquired, I mean, isn't that part of the equation of his having some knowledge that something else was going on in that car? Well, to the first point, it is serious. And that's why there were separate charges brought regarding the fleeing. He just happened to be found not guilty for that. Regarding what the fleeing itself has to do with establishing knowledge, the state has incited a case. I haven't been able to find a case where fleeing alone has been sufficient to establish knowledge. And for the purpose, for this case specifically, as I was getting into the facts, that is the only element of knowledge that even arguably could establish knowledge in this case. In most cases, when there's flight, there's additional indicia of knowledge. Sometimes knowledge can be established via ownership. In the vehicular context, that would be registration documents or so forth. The state actually, in this case, objected to a question by a defense counsel regarding who owned the vehicle. So there was no proof of who owned the vehicle. Without actual ownership, which allows for an indicia of knowledge, sometimes regular and ongoing control in the residential realm, that's usually like habitation. In the vehicular context, it's regular and ongoing control. It can be established via sometimes personal belongings in the vehicle or other indicia of ownership or use. Sometimes there's been prior traffic offenses. Sometimes there's a statement from the registered owner or the defendant themselves. But in this case, there's none of that. And I would ask this court to look at the cases cited by the state. There is not one where just presence and flight was enough to establish knowledge. What about People v. Ingram? People v. Ingram, 389 ILL-APT 3rd, 897. Flight from car while ignoring demands to stop, supported inference, defendant possesses gun? Well, according to the state, that's what happened. But actually, in the case, the gun was in plain view on the floor of the car. So again, when a contraband is in plain view, that makes the flight at that point, it might be even irrelevant, if not just more corroborative. But here, there was no indication whatsoever that Mr. McKnight was aware of the gun in the glove compartment. It was closed. The officer testified to seeing no furtive movement, no physical gestures, reaching for or trying to attempt to hide the gun. The gun was already hidden. He wouldn't have to do anything. He knew the gun was in the glove compartment. It was not visible. Well, the only proof that he knew the gun was in the glove compartment would be flight. If this court is going to say that flight alone is sufficient to establish knowledge, it would be an expansion of constructive possession jurisprudence without some other indicia of knowledge typically associated with these cases. And to be clear, he initially complied with the stop. He was in the process of pulling out his driver's license when officers from both sides attempted to open the doors and demanded that he exit the vehicle. And of course, yes, he did flee. But without some other proof of knowledge, the probative value of that flight is rather minimal. There's a number of reasons somebody could flee from a very obvious pretextual stop, as this case, that was escalated as quickly as it was. Did you argue a pretextual stop in your brief? I'm sorry? Did you argue a pretextual stop? I mentioned, of course, that it wasn't obviously a pretextual stop. Yes, sir. Mr. Nuri, could the fact that your client initially cooperated and was pulling out his license, I think you mentioned, but then as the police officers opened the door, at that point he took off, isn't that some evidence from which one could reasonably infer that he had knowledge of the gun because that's why he took off? It was only when the police officers started intruding upon the vehicle that your client took off. On the other hand, it could be reasonable to infer that he assumed initially that it was going to be a regular traffic stop. He didn't know why he was being pulled over, but to be immediately demanded that you get out of a vehicle in an unmarked car, there's a number of reasons that somebody might flee from the police. In that case, I can't put myself in the shoes of the defendant, of course, but there are people that have had negative interactions with police. I don't think that's a groundbreaking thing to say. And again, I've been unable to find a case where fleeing alone is sufficient to establish knowledge in these cases. Typically, as your honor mentioned, within Ingram, the gun was in plain view. In other cases where flight is used as corroborative evidence of knowledge, there's some other indicia of ownership or regular use. Be it prior use, prior traffic violations in the same vehicle, statements from the actual owner saying that the defendant had driven the car before and on regular occasions. So again, it's by itself, as this court has stated in People v. Tates, in that case that the defendant fled when police used a battering ram to break down the front door. This court found that while the flight was probative, standing alone, it didn't satisfy the state's burden to prove that the defendant constructively possessed, in that case, the narcotics that were actually in plain view in the kitchen of that residence. And this court focused on the fact that the flight alone was minimally probative, given the fact of lack of any other evidence connecting to the defendant, in that case, to the contraband in the residence. Mr. Noor, you have five minutes left in your opening, so do you want to pivot to your Second Amendment argument, unless my colleagues have any questions on the first issue? Okay. I will reserve the remainder of my time for the rebuttal, thank you. No, you have five minutes left. Do you say you want ten minutes for your rebuttal? Oh, no, no, sorry, yes, yes. Okay, thank you. Should this court disagree with Mr. McKnight's first argument? Alternatively, Mr. McKnight argues that his conviction should be reversed because the unlawful possession of a weapon by a felon statute is facially unconstitutional, where there is no sufficiently similar historical analog to the automatic, indiscriminate, punitive, and indefinite disarmament caused by the unlawful possession of a weapon by a felon statute. Initially, the state in its briefs didn't attempt at all to engage in any historical analysis via the supplemental briefs it has. Just to briefly discuss whether the Second Amendment applies to felons, it should be noted that the defendant in Rahimi, in a two-month span, was involved in multiple shootings in and around Texas, in and around Arlington, Texas. Also involved in the selling of narcotics. He was shooting into an individual's residence, into multiple cars. He left the scene of an accident. The Fifth Circuit Court of Appeals, noting his pre-sentence investigation report, detailed what it quote said was a lengthy criminal history. There seems to be no indication that he was in any way a law-abiding, responsible citizen. Nevertheless, the Rahimi court did go into substantive Bruin analysis regarding the statute at issue in that case. The central question in these Bruin issues is both how and why the regulation burdens the Second Amendment right to bear arms. And even if a law regulates arm-bearing for a permissible reason, it may still be incompatible with the Second Amendment if it does so to an extent beyond what was done at the founding. Were violent individuals at the birth of our nation and the colonies in the early states, violent individuals restricted from owning guns? Based on the state's burden to establish that, Your Honor, I'm not sure. You're not sure, so you don't know what the history, you do cite some articles and I read them and I don't agree that they say what you say they say, but the one from Montana, in fact, the conclusion is that prohibitions of violent felons may be presumptively law, that are presumptively lawful under, are not presumptive, may be presumptively lawful under Heller, but that there's a difference between a violent felon and a nonviolent felon and that article said that if you're nonviolent, it came to a different conclusion than those that are violent under the history. So it seemed to me to be an article that would support what the state's position is. Well, according to the state's position, from what I was aware of, the surety laws were the most similar historical analogy that the state cited. Surety laws were usually didn't even actually disarm the individual, they just posted a surety. And the United States Supreme Court in Rahimi, it's important to note that it looked to the why of the burden and typically surety laws were used to prevent spousal abuse. So it was actually a closer analogy in Rahimi where the statute at issue was to prevent someone with alleged spousal abuse from holding a firearm. In this case, it's an automatic and indefinite disarmament without a sufficient historical analogy. But is there an argument, Mr. Nuri, that historically at the founding states, the nation barred domestic abusers from possessing firearms, but not other violent folks? According to some of the historical analysis, surety laws were used on prior occasions at the founding. One of the reasons for them were to prevent spousal abuse. Whether dangerous, quote unquote, dangerous people were disarmed, it's the state's burden to establish they were sufficiently similar, disarmed in a similar way, if it was as broad as the unlawful possession of a weapon by a felon statute was, if it was automatic, if it was indefinite, if it was as punitive. Do they have to do that or can we take judicial notice? Of course, this court can take judicial notice. So let's, isn't it true that in the early years of this nation, various groups were restricted from having guns? Various groups, yes. Typically, for perhaps prejudicial reasons, various groups were. It wasn't a safety reason. At that time, the idea was that it was safety more than prejudice. I mean, there was prejudicial, yes, to turn into the groups, but it was for their own safety, was it not? That was the reason given for some of those disarmament regulations then. Reliance on those examples today, when most courts would find the justification for those weak then, does seem minimally probative to the regulation at issue in this case, though. But it's an analog. I mean, we're looking for an analogy at the beginning of the nation, and there were groups of people that were prohibited from owning guns. That's the analogy, that it's a different group, that's an issue, but it had to do with safety, did it not? I believe that was the given justification. Again, I would say the real justification was animus towards politically disfavored groups. Of course, they clipped that in the name of dangerousness, but again, there's also no explanation of the length, the duration, the comprehensiveness of such disarmament, and whether there was any chance for those disfavored groups to come into possession of firearms. So don't we need to have some kind of historians then testify? Is that what you're saying? Based on the record. Based on a full-blown hearing on a history lesson. Well, the Second Amendment provides this right that is guaranteed in the Second Amendment. And if the state wants to have such a broad permanent ban, then yes, it should be held to a high standard to justify it with a historical analogy that's sufficiently similar. I will remain... Let me ask my colleagues if they have any other questions before I turn to Ms. Slattery. I'm hearing none. Thank you, Mr. Noory. We'll come back to Ms. Slattery in a minute. Thank you. May it please the Court. Defendant's challenge to the sufficiency of the evidence lacks merit. Here, the people presented sufficient evidence that defendant, an undisputed convicted felon, was in constructive possession of the firearm and guilty of UUW felon beyond reasonable doubt. Do you have any cases that say that inference alone is enough? This is the original cases he's looked and he finds nothing like this. There's plenty of cases talking about the fact that constructive possession and knowledge is often proved by circumstantial evidence. We rarely have direct evidence. You have direct evidence when it's actual possession, which is not the case here. We do have the flight, and I'll get into the flight, but we also have the undisputed fact that defendant was the sole occupant and driver of the vehicle at all relevant times. Before the stop, during the stop, during his flight, and when he crashed into two other cars. Do we know whether it was his car? We don't, and as the trial court noted, the question is possession and not one of ownership. So the fact that we don't know who the owner of the car is does not preclude a finding that the defendant had constructive possession of the firearm that was in the car. Well, if he had no knowledge, if it wasn't his car, then people don't usually get into a car and look in the glove compartment. I mean, if that isn't, it seems to me it could go either way, that issue. Just because somebody's sitting in the driver's seat of a car, they don't own it, that would be pretty dangerous that any of us could get into a car, not look in the glove compartment, and later on find there's a gun. True. I mean, I think the fact that it was in the glove compartment and in reaching distance of the defendant is significant. Also, the fact that unlike Pupil v. Hampton, which the defendant cites, you know, the gun wasn't concealed within the glove compartment. Based on the relevant testimony, it appears that once the glove compartment was opened, it was within plain view. Yeah, but you said that that alone should be circumstantial evidence that because it was within arm's reach. True, true. But that's why he's saying that there needs to be something else. I mean, I think that's what the defendant's arguing. I mean, that's not enough. So, we don't just have the defendant's presence in the vehicle or the fact that it was within view. I mean, those are all relevant factors. We have to talk about the flight. It can't just be discounted. The trial court found that his flight was extremely probative of his consciousness of guilt. And looking at everything that happened, you know, the stop started out pretty benignly. Defendant was initially cooperative and then defendant stopped being cooperative and took off at a high rate of speed. Defendant's flight, as the trial court noted, was pretty probative of consciousness of guilt and of his knowledge of the weapon in the car, especially given the fact that the inventory search of the vehicle yielded only one thing of note. And that was the firearm that was in the glove compartment. So, it's not just flight. It's not just defendant driving the car. It's not just the fact that the firearm wasn't reaching distance of the defendant. It's the confluence of all these factors that supports the trial court's finding that the defendant had constructive possession of the firearm and was guilty of UUW felon beyond a reasonable doubt. Although the defendant attempted to, at trial, in his post-trial motion, to provide alternative explanations as to why he might have fled from police, it's clear that the trial court did consider those factors and the trial court was not required to accept all potential innocent explanations and make that rise to the level of reasonable doubt. It's the people's position that construing all of the evidence in the light most favorable to the people, that the evidence was sufficient to prove that defendant had control over and knowledge of the firearm to establish his guilt of UUW felon beyond a reasonable doubt. Now, with respect to the defendant's constitutional challenges... If I can add, before you move on, Ms. Slattery. So, you know, the Ingram case, Mr. Noory points out that the gun was in plain view. So, it's really irrelevant whether the defendant took off, right? It's not. Again, courts consider all the relevant factors of the stop. So, in Ingram, the defendant was not even driving the car, so he was a passenger. There was a firearm that was in plain view in the backseat of the car. And then in talking about whether the defendant had knowledge, the court found that it was extremely important or indicative of his knowledge of the fact that he fled. So, the people were deciding that for the proposition. So, the gun, let's say, was in the center console where the defendant had to have seen it. The fact that he took off is really irrelevant because it's right there in front of him. On the other hand, if it's in the backseat, is there some suggestion that maybe he didn't know about it? There could have been. Go ahead. What about that? I think Mr. Noory said it. I think he said the Tate case where the court held that the flight was minimally probative. I think Tate, so that was drugs in a house. I think the defendant in that case, he wasn't the only one that was in the residence or had access to the residence. So, again, there are differences here. We have the defendant, he's the only one in the car, in control the entire time prior to the stop, during, and afterwards. So, all of these cases, there might be, they share some similarities, but there are important differences because all of these constructive possession cases are so fact-dependent. What are some of the instant explanations that the defendant offered for his flight? The fact that he was on parole, the fact that he was a person of color, I think were the two that his attorney argued. Isn't it probative the fact that he did not flee until there were officers on either side of the car and he was asked to get out? I mean, the timing of his fleeing. Sure. Yeah, I think the timing of the flight is incredibly important. You know, although we didn't have a specific part of movements toward the glove compartment, he tried to take the entire car with him. So, yes, I think that's a very important factor. Because before that, there was no indication he was about to flee, he was cooperative until that point. It wasn't as if he was stopped by police and then he pulled out immediately. Right. Yeah, the circumstances of when he fled, yes, I also agree that's pretty important. So I can address the constitutional challenges quickly if we're done with the first issue. So the Second Amendment has never been interpreted to provide an unfettered access to firearms to any person at any time. And the UUW felon statute here, which prohibits felons from possessing firearms, accords with Bruins the applicable test. So first, the conduct regulated by the statute prohibiting felons. Let me ask a question. What's your response to defendant's argument that you have not met your burden? So I think he's talking about the historical analog. So the people cited to a number of analogs in our brief and in our supplemental brief. There has been throughout history evidence of status based disarmament laws. Various groups have been disarmed due to their perceived dangerousness, including religious affiliations, ethnicities and disloyalty. And these status based disarmament laws were enacted due to the fact that these groups were perceived to be unwilling to follow the law. There's also surety laws. The courts that have analyzed this issue have analyzed it to surety laws and going arms laws, which essentially were designed to prevent people who pose a danger from using firearms in a way that menace society. And the surety laws were not limited to domestic violence cases. That should be clear. There's also been a historical tradition of punishing serious offenses, both violent and nonviolent, through the death and the forfeiture of property, which would also include firearms. So although the specific statutes at issue are a product of the 20th century, they have evolved from pre-existing prohibitions restricting access to firearms. So the people's position that the UUW felon statute does not violate the tenets of the Second Amendment or the Illinois Constitution either. No, unless there are any further questions, people respectfully request the support to affirm defendant's UUW felon conviction. Ms. Lottery, what is your view about the Second Amendment, including people who are felons versus law-abiding citizens? Does the state take position that if you are a non-law-abiding citizen, the Second Amendment does not apply? Yeah, the people's position and majority of courts that have addressed this at the appellate court level have found that the people referenced in the Second Amendment refers to law-abiding citizens. The Second Amendment has long been tied to virtuous citizenship. And the United States Supreme Court, throughout its Second Amendment jurisprudence, has repeatedly used the term law-abiding when talking about the scope of the Second Amendment. And the court has also made it a point in Heller and in Bruin and Rahimi to note that, you know, statutes disarming felons and those who are mentally ill from possessing firearms are presumptively lawful. So it's the people's position that with respect to the, you know, the first portion of the Bruin test, that felons are not included in amongst the people that the Second Amendment applies to. People recognize that there is a split. Yes, a small minority have found that people encompasses both law-abiding and non-law-abiding people. So in Brooks, a different division of this court held that. In Travis, the third district also held that. I think it's important to note that those cases did not appear to give, pay that much attention to the specific phraseology that the United States Supreme Court employed throughout its Second Amendment cases. The fact that, you know, the phrase law-abiding was used by the courts in Bruin, I guess, 18 times, in majority opinion and concurrences, is pretty important and neither Brooks nor Travis. Well, but so in Rahimi, the court also said, yeah, we use the word responsible many, many times, but we didn't really mean it. So. Well, they didn't say they didn't mean responsible. They said the responsible is not, it's not something that's clearly defined. I think law-abiding is something that is much more clear. And in Rahimi, you know, the defendant in that case, as opposing counsel noted, he was clearly not a law-abiding individual. So while they would not necessarily disarm him because he was, quote unquote, not responsible. The fact that he was not law-abiding supported the court's decision. Anything else from my colleagues? OK, thank you. And Mr. Murray. Yes, just a couple quick things regarding argument two before I'd like to focus the rest of my time on the reasonable doubt, because I, Mr. McKnight does want to maintain that this court should, this case should be decided on non-constitutional grounds because he never possessed the firearm. But the fact that in Rahimi, the court recognized that he was not law-abiding and yet still engaged in a Second Amendment analysis actually supports Mr. McKnight's argument in this case. If law-abiding, if non-law-abiding means the Second Amendment doesn't apply, then there was no, there was the, that would be the first step of brewing. The second step wouldn't be necessary. Going to, there was a little discussion about Ingram, and there was a question from Your Honor regarding the gun being in the backseat. And I just wanted to clarify that. And this is quoting from the case here, the testifying officer described the gun as in plain view, right behind the driver's seat. A photograph depicted the gun on the red carpet floor with nothing else in the immediate vicinity. Because the front passenger seat was broken, the seat was resting in the backseat right next to where the gun was found. So the passenger was sitting next to the firearm. The size of the gun made it easily identifiable as a gun, and defendant had not just entered the car, but had been in the car for a sufficient period of time, implying knowledge. That's all discussed before there's any mention of the flight being used as inference of knowledge. But just to be clear, you're saying that the defendant was in the backseat and that the gun was on the floor behind the driver's seat, and so he had to have known about it. Is that your point? That was a sufficient inference of, or indicia of knowledge that the gun was in, was in plain view from where the passenger was sitting in the car, yes. I just wanted to clarify because it was a little confusing that the passenger was in the front seat, but based on something going on in his car, he was actually sitting in the back next to the firearm, which was in plain view. And then just to go through some of these cases cited by the state and its response brief regarding flight. There was a Jones case, 2019. Officers responded to a call of someone with a firearm. The defendant fled. The officer, Dave Chase, saw the defendant reaching in his waistband, tossing a black object that made a metallic noise. And People v. Miller, also cited by the state, the defendant was seen with something in his hand, and he was seen reaching behind the staircase, hiding it, and then ran away with his hand empty. Similarly, in People v. Anderson, again, it was flight. The officer saw him tucking, reaching from his waistband before throwing something. I already discussed People v. Al-Jouhani, where there, the police knocked on the door, and the defendant escaped from the rear of the residence, when earlier in the day, there was screaming heard inside the apartment, and a body was found in that same residence. In People v. Jackson, the defendant was the owner of an entire building. Narcotics were found in one of the units, and in the basement unit where the defendant was seen fleeing to, officers found baggies and a scale with heroin remnants that matched the contraband that was found in a separate unit. So just to be clear, again, there's no case with this minimal amount of evidence where a court of appeal has upheld a conviction based on constructive possession. As I stated, constructive possession does, of course, require circumstantial evidence, but it has to have some actual evidence of knowledge in some way that can satisfy the state's burden here. It's not a strict liability offense, and fleeing alone, again, does not create strict liability for anything that's subsequently recovered from a vehicle that a person does not own or regularly use or control. As such, Mr. McKnight requests that this court reverse his convictions because the state failed to prove that he possessed the gun found in the glove compartment of the car that he was driving. Alternatively, Mr. McKnight argues that this court should reverse his conviction because the unlawful possession of a weapon by a felon statute is facially unconstitutional. Thank you. Any more questions from my colleagues? Okay, hearing none, Mr. Noorie and Ms. Slattery, thank you for your informed argument. The case is submitted and we will issue a decision in due course. Have a good day.